USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/30/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
HILLEL Y. MARANS, M.D.,                                     :
                                                            :
                              Plaintiff,                    :
                                                            :                 18-CV-256 (VSB)
            - against -                                     :
                                                            :                 **OPINION & ORDER**
                                                            :
INTRINSIQ SPECIALTY SOLUTIONS,                              :
INC. d/b/a INTRINSIQ SOFTWARE and                           :
AMERISOURCEBERGEN DRUG CORP.,                               :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X

Appearances:

Martin H. Kaplan
Gusrae Kaplan Nusbaum PLLC
New York, New York
*Counsel for Plaintiff*

Paul E. Asfendis
Amy M. Handler
Gibbons P.C.
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Hillel Y. Marans, M.D. brings this action alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment against Defendants Intrinsiq Specialty Solutions, Inc. ("Intrinsiq") and AmerisourceBergen Drug Corp. ("ABDC") (together, "Defendants"). Before me is Defendants' motion to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Plaintiff fails to plausibly allege claims for (1) breach of contract, and (2) breach of an implied covenant

of fair dealing, and because the liability limitation provisions of the contract at issue are enforceable, Defendants' motion is GRANTED.

## I. **Background**[1]

In March 2010, the Patient Protection and Affordable Care Act ("ACA") was signed into law. (FAC ¶ 2.)[2] The ACA promoted the development of electronic health records ("EHR") systems as part of an effort to limit medical errors, reduce costs, and streamline patient care. (*Id.*) Together with other legislation, the ACA funded health care providers' establishment of EHR systems. (*Id.*) In particular, Medicare and Medicaid EHR Incentive Programs provided incentive payments to medical professionals who, among other things, demonstrated "meaningful use" of certified EHR technology. (*Id.*)

Plaintiff is a licensed urologist in New York. (*Id.* ¶ 3.) In 2012, he entered into an agreement (the "Agreement") with meridianEMR, Inc. ("meridianEMR") to purchase services and to license certain EHR software (the "Meridian Software") for operation of Plaintiff's medical practice. (*Id.*) Among other things, the Agreement provides:

1. meridianEMR Services and Licenses.

    a) Services. meridianEMR shall provide the "Services" as described in the Exhibits herein. meridianEMR will provide application and operational support services to [Plaintiff] only for the software application programs specifically identified in the Exhibits.

    b) License. In accordance with the Agreement, and subject to the termination clauses herein, meridianEMR hereby provides [Plaintiff] a restricted, non-transferable and nonexclusive license to use the Services and software for the sole purpose of supporting the internal operations of [Plaintiff's]

---

[1] The following factual summary is drawn from the allegations of the First Amended Complaint and exhibits attached thereto. (Doc. 16.) *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations and exhibits should not be construed as a finding as to their veracity, and I make no such findings.

[2] "FAC" refers to the First Amended Complaint, filed March 2, 2018. (Doc. 16.)

2

business . . . .

(*Id.* ¶ 16, Ex. A.) In exchange for the license and services, Plaintiff paid startup and interface costs and annual support fees of approximately $2,500 per year. (*Id.* ¶ 17.) He also spent hundreds of work hours learning and implementing the Meridian Software, which became an essential part of Plaintiff's business. (*Id.* ¶¶ 3, 18.)

The Agreement also contains provisions governing its term, termination, and limitations on the parties' liability. In particular, it states:

> 6. Term and Termination.
>
>    a) Term of Licensed Application Software. The term for [Plaintiff's] use of the [Meridian Software] shall be from [January 13, 2012] . . . until this Agreement is terminated as provided in this section . . . . The support part of this agreement will begin from [January 13, 2012] and will automatically renew based upon payment for annual support services for successive one year terms unless either one of the parties terminates the Agreement by providing written notice to the other party at least 90 days before the Termination Date.

(*Id.* Ex. A § 6.) It also states:

> 5. Limitation of Liability and Disclaimer of Warranty.
>
>    a) Exclusive Remedy. meridianEMR's obligation and [Plaintiff's] sole and exclusive remedy from a breach of this agreement . . . shall be that meridianEMR will credit [Plaintiff] a portion of [Plaintiff's] fee for the time period during which the Services were inoperative.
>
>    . . .
>
>    d) Limitations. Unless otherwise expressly stated herein, neither meridianEMR nor any of its service providers, licensors, employees or agents warrant (i) that the operation of the Services will be uninterrupted or error free; or (ii) that the Services meet [Plaintiff's] requirements. Except as set forth herein, meridianEMR will not be responsible for any damages that [Plaintiff] may suffer arising out of use, or inability to use, the software and services.

(*Id.* § 5.)

7. General.

   . . .

   d) Entire Agreement; Amendments, Exhibits. This Agreement (including the Exhibits attached hereto) embodies the entire understanding of the parties in relation to its subject matter, and supersedes all proposals, letters of intent or prior agreements, oral or written, and all other communications and representations between the parties relating to the subject matter of this Agreement and no other agreement or understanding, verbal or otherwise, relative to this subject matter exists between the parties at the time of execution of this Agreement. This Agreement may be amended only by a written agreement signed by both parties . . . .

(*Id.* § 7.)

In or about 2015, Intrinsiq—a subsidiary of ABDC—acquired meridianEMR. (*Id.* ¶ 19.) The same year, Intrinsiq demanded that Plaintiff replace his working server with a new model because of "anticipated" updates and enhancements to the Meridian Software. (*Id.* ¶ 20.) Intrinsiq "assured Plaintiff that it had every intention of continuing product developments of the Meridian Software for years to come." (*Id.*) In reliance on Intrinsiq's assertions, Plaintiff purchased a new server for approximately $10,510 on July 30, 2015 pursuant to a Supplemental Purchase Agreement with Intrinsiq. (*Id.* ¶ 21.)

In or about June 2017, Intrinsiq informed Plaintiff that it was terminating support for the Meridian Software license, effective January 1, 2018. (*Id.* ¶ 22.) Intrinsiq also informed Plaintiff that it would be offering its customers an alternative software program called UroChartEHR ("UroChart"), which, according to Intrinsiq, offered a better software solution for the migration of patients' medical data. (*Id.* ¶ 23.) Plaintiff could either choose to purchase a license for UroChart and pay additional costs of approximately $1,000 per month for training, support, and a monthly subscription, or he could transition his data into an alternative EHR system for a one-time cost of approximately $15,000. (*Id.* ¶¶ 24–25.) Based on his

conversations with other physicians who converted to UroChart, UroChart has several shortcomings in comparison with the Meridian Software. (*Id.* ¶¶ 26–27.) Plaintiff expects to lose millions of dollars in practice income from a potential switch to UroChart or an alternative EHR software due to costs associated with implementing the new software and training staff. (*Id.* ¶ 28.)

## II. Procedural History

Plaintiff filed this action on October 4, 2017 in the Supreme Court of the State of New York, County of New York. (Doc. 1.) Defendants removed the action to this court on January 11, 2018. (*Id.*) On January 18, 2018, Defendants filed a motion to dismiss the complaint. (Doc. 5.) Plaintiff filed the First Amended Complaint on February 9, 2018.[3] (Doc. 8.) Defendants filed their opposition on March 26, 2018. (Doc. 17.) Plaintiff filed his reply on April 13, 2018. (Doc. 18.)

## III. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences

---

[3] Due to a clerical error, Plaintiff re-filed the First Amended Complaint on March 2, 2018. (Doc. 16.)

5

unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

## IV. Discussion

Defendants contend that Plaintiff fails to state a claim as to each of his causes of action. As an initial matter, (1) the First Amended Complaint fails to include any substantive allegations of wrongful conduct by ABDC or to state a basis upon which liability might be predicated against ABDC, and (2) Plaintiff fails to address in his opposition Defendants' argument that the First Amended Complaint fails to state a claim against ABDC. Therefore, the First Amended Complaint fails to plausibly allege any claims against ABDC, *see Pollack v. Nash*, 58 F. Supp. 2d 294, 304 (S.D.N.Y. 1999) (dismissing complaint that names a defendant but fails to include any substantive allegations against that defendant), and by not addressing Defendants' arguments concedes the issue, *see AT&T Corp. v. Syniverse Techs., Inc.*, No. 12 Civ. 1812(NRB), 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014) (concluding that plaintiff's "silence [in its opposition] concedes the point" ). As such, Plaintiff's causes of action against ABDC are dismissed. I

address each of Plaintiff's claims against Intrinsiq in turn below.

### A. *Breach of Contract*

#### 1. Applicable Law[4]

New York law requires that a plaintiff asserting a claim for breach of contract must allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (citation omitted). "A sufficient pleading for breach of contract must, 'at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion.'" *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 624 (S.D.N.Y. 2013) (quoting *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 286 (S.D.N.Y. 1991); *see also Sirohi v. Trs. of Columbia Univ.*, No. 97-7912, 1998 WL 642463, at *2 (2d Cir. 1998) (summary order) (concluding that plaintiff must allege "the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated" (internal quotation marks omitted)). New York courts require plaintiffs to "plead the provisions of the contract upon which the claim is based"—in other words, "a complaint in a breach of contract action must set forth the terms of the agreement upon which liability is predicated." *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, No. 91 Civ. 1816 (MBM), 1993 WL 312899, at *3

---

[4] Although the Agreement contains a New Jersey choice of law provision, (*see* FAC Ex. A § 7(i)), the parties do not explicitly address the applicable law. However, they apparently agree that New York law governs the interpretation of the Agreement because they both cite exclusively to New York law, (*see generally* Defs.' Mem.; Pl.'s Opp.). *Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989) (applying New York law under the principle of implied consent to use the forum's law where the parties' briefs rely on New York law).

"Defs.' Mem." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, filed February 23, 2018. (Doc. 12.) "Pl.'s Opp." refers to the Memorandum of Law of Plaintiff in Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, filed March 26, 2018. (Doc. 17.)

(S.D.N.Y. Aug. 12, 1993); *see also CreditSights, Inc. v. Ciasullo*, No. 05 CV 9345(DAB), 2008 WL 4185737, at *11 (S.D.N.Y. Sept. 5, 2008) ("New York law is eminently clear that a proper breach of contract claim must identify specifically breached contract terms.").

### 2. Application

Plaintiff fails to allege which terms of the Agreement Defendants purportedly breached. The only terms of the Agreement that Plaintiff alleges are the terms dealing with the services and license meridianEMR agreed to provide Plaintiff, (FAC ¶ 16, Ex. A § 1), and the terms limiting the liability of meridianEMR, (*id.* ¶ 36, Ex. A § 5). However, Plaintiff does not allege that Defendants breached either of those sections of the Agreement. Rather than identify the provision or provisions of the Agreement he alleges has been violated, Plaintiff asks that I invalidate the limitations of liability provisions of the Agreement. (Pl.'s Opp. 10–13.)

Plaintiff contends that at the motion to dismiss stage, he is only required to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (Pl.'s Opp. 6 (quoting *Wynder v. McMahon*, 360 F.3d 73, 76–77 (2d Cir. 2004)).) While Defendants appropriately point out that the correct pleading standard is plausibility pursuant to *Twombly* and *Iqbal*, (Defs.' Reply 1–2),[5] Plaintiff's breach of contract cause of action would fail even under the permissive standard he sets forth, *see Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (holding, prior to *Twombly* and *Iqbal*, that "a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue"); *Sirohi,* 1998 WL 642463, at *2; *Window Headquarters*, 1993 WL 312899, at *3.

Even if I were to construe the First Amended Complaint to allege a breach of the

---

[5] "Defs.' Reply" refers to the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint, filed April 13, 2018. (Doc. 18.)

8

"Services and Licenses" section of the Agreement, Plaintiff would fail to make out a claim based on the plain terms of the Agreement. That section does not state that meridianEMR may not terminate the license to the Meridian Software. Nor does it state that meridianEMR must provide Plaintiff compensation or credit for terminating the Meridian Software. To the contrary, that section is explicitly made "subject to the termination clauses" of the Agreement, (FAC Ex. A. § 1(b)), which require meridianEMR to provide ninety days' written notice prior to terminating the Agreement, (*id.* § 6(a)). Plaintiff does not dispute that under the terms of the Agreement, either party could terminate the Agreement as long as they provided ninety days' written notice. The First Amended Complaint alleges that Intrinsiq provided notice in June 2017 that it would terminate support for the Meridian Software effective January 1, 2018, (*id.* ¶ 22), which is more than sufficient notice of termination under the Agreement. Therefore, Plaintiff's breach of contract cause of action fails.

### B. *Breach of Implied Covenant of Good Faith and Fair Dealing*

#### 1. Applicable Law

"Under New York law, the implied covenant of good faith and fair dealing inheres in every contract." *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1575 (2d Cir. 1994). The implied covenant prevents the parties from taking actions that would deny another party the benefits of the parties' bargain. *Carvel Corp. v. Diversified Mgmt. Grp., Inc.*, 930 F.2d 228, 230 (2d Cir. 1991). However, "the implied covenant arises only in connection with the rights or obligations set forth in the terms of the contract, and cannot create duties that negate explicit rights under a contract." *In re LIBOR–Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 632 (S.D.N.Y. 2013) (internal citations and quotation marks omitted).

This implied duty of good faith "is merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) (internal quotation marks omitted). Accordingly, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). Therefore, "[c]ourts in this circuit consistently dismiss claims for breach of the implied covenant of good faith on these grounds." *See Joseph v. Gnutti Carlo S.p.A.*, No. 15-cv-8910 (AJN), 2016 WL 4764924, at *7 (S.D.N.Y. Sept. 12, 2016) (citing cases).

In order for Plaintiffs "to assert a cause of action for the breach of good faith and fair dealing that is not duplicative of their breach of contract claim," they "must allege that Defendants 'fulfilled their contractual obligations' but that those obligations were carried out 'in bad faith in order to deprive Plaintiffs of the benefit of their bargain.'" *Id*. (quoting *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 333–34 (S.D.N.Y. 2010)). In other words, Plaintiffs must allege that Defendants, "in bad faith, engaged in acts that had the effect of destroying or injuring plaintiffs' right to receive 'the fruits of the contract.'" *Demetre v. HMS Holdings Corp.*, 7 N.Y.S.3d 110, 112 (1st Dep't 2015) (quoting *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995)).

### 2. Application

Defendants argue that Plaintiff's implied covenant cause of action should be dismissed because: (1) Plaintiff fails to allege how Defendants prevented him from obtaining the benefits of the Agreement; (2) Plaintiff's implied covenant cause of action is duplicative of his breach of contract cause of action; and (3) Plaintiff's implied covenant cause of action imposes obligations

that were not part of the Agreement. (Defs.' Mem. 8–11.) Plaintiff contends that his implied covenant cause of action can stand alongside his breach of contract cause of action because he has sufficiently alleged that Defendants' conduct subverted the Agreement and prevented him from receiving the fruits of the bargain. (Pl.'s Opp. 7–10.)

First, Plaintiff's implied covenant cause of action is clearly duplicative of his breach of contract cause of action. It is based on the same set of factual allegations regarding Defendants' decision to terminate the Meridian Software license, and it seeks identical damages for injuries caused by that decision. Courts have dismissed implied covenant claims as duplicative in similar circumstances. *See, e.g.*, *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 426 (1st Dep't 2010) (dismissing implied covenant claim as duplicative of breach of contract claim where "both claims arise from the same facts and seek identical damages" (internal citation omitted)).

Plaintiff claims that even if the two causes of action overlap, his implied covenant cause of action should still survive because Defendants have prevented him from receiving the benefits of the Agreement. (Pl.'s Opp. 8–9.) Specifically, Plaintiff claims that Defendants misrepresented to him that they would maintain and continue to develop the Meridian Software "for years to come." (Pl.'s Opp. 9; FAC ¶ 20.) However, Plaintiff fails to explain how this statement was a misrepresentation. The First Amended Complaint does not specify when the purported misrepresentations occurred, what was specifically said, or who made the misrepresentations, but assuming they occurred at the time of the signing of the Agreement in 2012, (FAC ¶ 3), meridianEMR did maintain and develop the Meridian Software "for years to come," as the termination was to occur on January 1, 2018, (*id.* ¶ 22). Similarly, assuming the statements occurred in 2015—when Intrinsiq asked Plaintiff to replace his server due to

11

anticipated updates and enhancements of the Meridian Software, (*id.* ¶ 20)—Defendants still maintained and developed the Meridian Software "for years to come."

In any event, the Agreement imposes no obligation, implicit or explicit, compelling Defendants to maintain the Meridian Software "for years to come." As mentioned above, the Agreement explicitly provides that its term will automatically renew annually until either party terminates it by providing at least ninety days' written notice. (*Id.* Ex. A § 6(a).) Intrinsiq provided such notice, and Plaintiff has presented no reason why the termination provision is unenforceable or why Intrinsiq was obligated to do more. To the extent Plaintiff suggests that Defendants made oral representations regarding the term of the Agreement, those representations do not form part of the Agreement, as the Agreement explicitly states that it supersedes any oral representations made by either party prior to its signing and any subsequent amendment must be made in writing and signed by both parties. (*Id.* § 7(d).) Because the implied covenant of good faith and fair dealing "does not create obligations that go beyond those intended and stated in the language of the contract," *Wolff*, 210 F. Supp. 2d at 497, Plaintiff's argument is unpersuasive. Therefore, Plaintiff's implied covenant cause of action must be dismissed.

    **C.**    *Limitation of Liability Provisions*

        **1. Applicable Law**

Plaintiff seeks a judgment declaring that the limitation of liability provisions in the Agreement are unconscionable and/or void as a matter of public policy. (FAC ¶¶ 30–43.) Generally, under New York law, "[a] limitation on liability provision in a contract represents the parties' [a]greement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor." *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 643 N.E.2d 504, 507 (N.Y. 1994); *see also Grumman Allied*

*Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 735 (2d Cir. 1984) ("[W]here the parties to an agreement have expressly allocated risks, the judiciary shall not intrude into their contractual relationship."). When contracts including provisions limiting liability are "entered into at arm's length by sophisticated contracting parties," they are generally enforceable. *Kalisch-Jarcho, Inc. v. City of New York*, 448 N.E.2d 413, 416 (N.Y. 1983).

However, "an exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances." *Id.* For example, "a contractual provision limiting damages" may be unenforceable pursuant to "an overriding public policy." *Smith-Hoy v. AMC Prop. Evaluations, Inc.*, 52 A.D.3d 809, 810 (2d Dep't 2008). In addition, a liability limitation provision "will not apply to exemption of willful or grossly negligent acts." *Kalisch-Jarcho*, 448 N.E.2d at 416. In other words, a liability limitation provision will not protect a party who engages in "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 611 N.E.2d 282, 283–84 (N.Y. 1993).

### 2. Application

Plaintiff argues that the Agreement's liability limitation provisions are unenforceable because: (1) they limit liability for Defendants' conduct, which was "intentional, dishonest, and/or evinced a reckless disregard for Plaintiff's . . . rights," and (2) they violate a public policy to achieve "meaningful use" of EHR technology. (Pl.'s Opp. 11.) Neither argument is persuasive.

First, Plaintiff has failed to establish that Defendants' termination of the Meridian Software license was wrongful, dishonest, or done in bad faith. As discussed above, the notice of termination provisions of the Agreement permitted Defendants' termination of the Meridian

13

Software license upon ninety days' notice, which Defendants provided. It cannot be said, therefore, that Defendants engaged in any wrongful or dishonest conduct. To the extent Plaintiff asserts that Defendants made certain "misrepresentations" regarding the term of the Meridian Software license, Plaintiff has failed to allege the specific substance of the misrepresentations, how they were misrepresentations, when those misrepresentations were made, or who made those misrepresentations, as discussed above.[6]

Second, Plaintiff has failed to establish that New York law recognizes any public policy preventing EHR technology providers from terminating licenses to their products upon duly provided notice and in accordance with the terms of a governing contract. The fact that the federal government passed legislation providing incentives to medical providers for using EHR technology does not create new obligations under a contract negotiated at arm's length that are not spelled out in the contract. As such, Plaintiff's declaratory judgment cause of action fails.

**V.    Conclusion**

For the foregoing reasons, Defendants' motion to dismiss, (Doc. 11), is GRANTED. The Clerk of Court is respectfully directed to enter judgment for Defendants and close this case.

SO ORDERED.

Dated: September 30, 2018
       New York, New York

Vernon S. Broderick
United States District Judge

---

[6] Because I find that Plaintiff fails to allege bad faith conduct on the part of Defendants, I have no occasion to rule on whether the liability limitation provision in the Agreement would absolve Defendants of liability for such conduct.

14